Davis' Sons v. Butrick.

1. **Sale of Machine:** WARRANTY CONDITIONED UPON WRITTEN NOTICE OF DEFECT: WAIVER. Where a machine was sold with a warranty conditioned upon the purchaser's giving to the seller a *written* notice of any defects, in order that an opportunity might be had to remedy them, but the seller responded to an oral notice given to an agent, *held* that he thereby waived the right to exact a written notice.

2. ———: WARRANTY: FAILURE: RIGHT TO RETURN MACHINE AND DEMAND NEW ONE, OR MONEY AND NOTES: CONDITIONAL RETURN OF

MACHINE. Where a machine sold under a warranty failed to do good work, and the contract provided that in that case the purchaser might return it and receive back a new machine, or the money and notes given for the old one, and he made an unconditional return of the machine, it was the duty of the sellers then either to give him a new machine or his money and notes; and the fact that the purchaser, after so returning the machine, demanded his *money and notes* did not render the delivery of the machine a conditional one, depending upon the return of the money and notes, and did not amount to a denial of the seller's right to return a *new machine,* if they should so choose. *Pitts' Sons' Manuf'g Co. v. Spitznogle,* 54 Iowa, 36, distinguished.

## *Appeal from Benton District Court.*

### THURSDAY, DECEMBER 17.

THIS is an action upon a promissory note, which was executed by defendant to the plaintiff for part of the purchase price of a threshing-machine. The defendant pleaded, by way of answer and counter-claim, that he bought the machine upon a written warranty; that there was a breach of the warranty; and that, in compliance with the terms of his contract, he returned the machine; and he demanded judgment against the plaintiffs for the amount he had paid on the contract, and for his other outstanding notes given for the machine. There was a trial by jury, which resulted in a verdict and judgment for the defendant. Plaintiff appeals.

*Warner & Whipple* and *Cook & Dodge,* for appellants.

*Nichols & Burnham,* for appellee.

ROTHROCK, J.—I. The purchase price of the machine was $650. Of this amount $250 was paid in cash, and two notes were given for the remainder,—one for $150, due November 1, 1883, and the other for $250, due November 1, 1884. The suit was brought on the last mentioned note. The other note had been sold and transferred to other parties, and the judgment for the defendant was for the amount of the cash payment, and the amount of the note which had been trans-

ferred and sold, and interest. The contract for the machine was in the form of an order signed by the defendant. It was made on the ninth day of July, 1883. The warranty of the machine, as shown by the order, was as follows:

"The machine ordered herein is purchased and sold subject to the following warranty and agreement: That it is well made, of good material, and, with proper management, is capable of doing first-class work; that the purchaser shall have three days to give it a fair trial, and, if it should not work well, written notice stating wherein it fails is to be given to the agent from whom it is received, and to John S. Davis' Sons, Davenport, Iowa, and reasonable time allowed to get to it and remedy the defects, if any, (the purchaser rendering necessary and friendly assistance,) when, if it cannot be made to do good work, it shall be returned to the place where received, and a new machine given in its place, or the notes and money will be refunded. Continued possession of the machine shall be evidence of satisfaction; it being understood and agreed that if purchaser does not make full settlement, with cash or approved notes, for the machine upon its delivery to him, he thereby waives all claims under this warranty. (No agent has authority to change the above warranty.) There is no verbal agreement or condition to this sale.                    "WM. H. BUTRICK."
          [SEAL.]

The plaintiff demurred to the answer. The demurrer was overruled, and a reply was filed. It is unnecessary to consider the question whether the demurrer was waived by filing the reply. The same question arose upon the trial in the charge of the court to the jury, and the conclusion we have reached in the case renders the question of practice an unimportant one.

The order required that the machine should be shipped from Davenport to T. J. Mead, who was the agent of the plaintiff. It appears that the shipment was made to Center

Point, and the agent, Mead, and one J. T. Drug, another agent of the plaintiffs, were there. The defendant came there, and they took the machine off the cars, and the defendant took it away and undertook to use it. . Mead resided at Urbana, some distance from Center Point. His. place of business was at his home, as we infer from the evidence, including certain letters written by him. The plaintiffs had no agent at Center Point. Soon after the machine was set up, the defendant sent a verbal notice to Mead at Urbana that it was not working properly, and that he (Mead) should come up and see about it. On the next day Mead and Drug went to the place where the defendant was using the machine. Drug was traveling agent of the plaintiffs, whose business in part was to see that machines were made to comply with the warranty. There is a conflict in the evidence as to what occurred when plaintiffs' agents made this first visit to the machine; but all the evidence shows that the machine was faulty and defective in its construction, and that it was not doing good work, and Drug did something by way of changing the position of a riddle, but that made no material change in the operation of the machine. This was on the seventh of August. Drug went away, and returned again on the twenty-fourth of August, having been sent by the plaintiffs for the purpose of putting the machine in order. The evidence shows that the machine was not then doing good work, and it was not put in good order by Drug. The defendant then notified Drug that he would have nothing more to do with it. Drug went away, and on the next day the defendant took the machine to Center Point, and left it near the depot, at the place where the railroad station-agent directed him to leave it. There was no agent of the plaintiffs there at the time. After returning the machine, the defendant went to his home, and from there to Urbana, where he found the agent Mead, and notified him that he had returned the machine to Center Point, and left it there, and demanded a return of his notes, and the money he had paid on the

machine, and freights. The plaintiffs refused to receive the machine, and commenced this action in the December following.

It will be observed that the warranty required that, if the machine did not work well, *written* notice should be given to the agent and to the plaintiffs; and that, if the machine could not be made to do good work, it was to be returned to the place where received and "a new machine given in its place," or the notes and money refunded. There was abundant evidence from which the jury could properly find that the machine was materially defective in its construction, and that plaintiff failed to remedy the defects; and the acts of the plaintiffs in sending their agent for the express purpose of fixing the machine were such as to clearly show a waiver of the written notice required by the contract. If the plaintiffs intended to require an exact compliance with the contract in this respect, they should have stood upon the terms thereof, and awaited the written notices. All of the acts, including telegrams and letters, showed that they did not intend to insist on written notices, but that they regarded the notice given as sufficient.

1. SALE of machine : warranty conditioned upon written notice of defect: waiver.

The court instructed the jury as follows: (3) If you find, from the evidence, that the defendant, within a reasonable time after receiving the machine, gave it a fair trial of three days, and managed it properly; and you further find from the evidence the machine was not well made, of good material, or that it was not capable of doing first-class work with proper management,—then there would be a breach or failure of the written warranty; and if you then further find, from the evidence, that the defendant then gave verbal notice thereof—that is, stating wherein the said machine failed to comply with said warranty—to T. J. Mead, the agent of plaintiffs, and that in response to such notice plaintiffs sent an agent to defendant to repair or remedy the defects, if any;

2. ——: warranty: failure : right to return machine and demand new one, or money and notes: conditional return of machine.

that said agent appeared there about August 7, 1883, for that purpose; that he then did not do so, but stated that he would return and do so; that about August 24, 1883, plaintiffs again sent said agent to put the machine in good order, and he then failed to do so, and went away; and you find that the defendant rendered said agent necessary and friendly assistance, and that plaintiffs had a reasonable time to put the same in order so that it would do first-class work, with good management; and you further find that about August 25, 1883, defendant hauled it to Center Point, where he had received it, and left it there, subject to the order of plaintiffs, without conditions, and notified plaintiffs, or their agent T. J. Mead, that he had done so; and you further find that plaintiffs neglected and failed to either remedy the same or put it in good order, or to furnish a new one therefor,—then your verdict will be for the defendant, and the measure will be for $250, with ten per cent interest from August 1, 1883, and the sum of $150, with eight per cent interest from August 1, 1883. (4) But if you find, from the evidence, that the machine was not made of good material, and was not capable of doing first-class work, with good management; and that defendant did notify plaintiffs as stated in the last instruction, and did return the machine to Center Point as therein stated; but find that the defendant left the machine there subject to the control and order of plaintiffs only on condition that they would surrender and return the notes and money he had given for the same, and that he did not leave it optional with the plaintiffs to receive the machine to repair or remedy it, or to furnish him a new one in lieu of that one; or if you find he did not properly manage the same,—then defendant would have no right to recover on his counter claim; then your verdict will be for the plaintiffs.   *   *   *

The only objection made by appellants to these instructions which we think demands consideration is that, they assume that the machine was left by defendant at Center Point, subject to the order of the plaintiffs, without condi-

tions.   The notice to Mead was that the machine was left at
Center Point, and demand was made for the notes and money.
It is claimed that, as it was optional with plaintiffs whether
they would return the notes and money or furnish another
machine, the defendant could not rescind the contract by
delivering the machine, and demanding the notes and money,
but that the demand should have given the plaintiffs their
option to furnish another machine.   It is insisted that the
undisputed facts in this case bring it within the rule
announced by this court in *Pitts' Son's Manuf'g Co. v.
Spitznogle*, 54 Iowa, 36.   The terms of the warranty were
substantially the same in that case as in this, but the acts of
the purchaser of the machine were different.   In that case
the purchaser hauled the machine to Muscatine, and demanded
of the agents, Benham & Smith, the surrender of his notes,
"and offered upon such surrender to deliver up the machine."
Upon their refusal to comply with the demand, the pur-
chaser stored the machine with one Murphy, and made a
written demand for the notes, and stated that the machine
was subject to their order; and the circuit court in its find-
ing held that there was no rescission, because the purchaser
made the return of the notes " the indispensable condition of
the return of the machine."   In other words, that the seller
had no right to take the machine from the custody of Murphy
without a delivery of the notes.   And this court held that
"before the defendant can claim that there has been a rescis-
sion of the contract, it must appear that the machine was
returned under circumstances allowing the plaintiff this
option, and that the plaintiff neglected, either to refund the
payments, or deliver another machine."   One of these cir-
cumstances was that above stated, that the surrender of the
machine was conditioned upon the return of the notes.   It is
true that this circumstance was not specially alluded to in
the opinion, and there is language used therein which seems
to imply that the condition imposed by the defendant as to
the delivery of the machine was immaterial; but every case

must be determined on its own facts. In this case, the defendant received the machine from the cars at Center Point, and he returned it to the place where it was delivered to him,—the point where, as we assume, it was most convenient to again load it upon the cars. So far he complied with the very letter of his contract,—"he returned it to the place where received." This was without condition, as all his acts show. He advised the agent the day before that he would have nothing more to do with it. It was an unconditional delivery of the machine,—that is, he did not intend to take it back, if the plaintiff did not ship it away or otherwise dispose of it; and when he left it at the place where he received it, the plaintiffs were then required, without any demand, to do something,—either to furnish another machine or return the notes and money. And it is plain that this was the thought of the court in the above instructions. They submit to the jury, in effect, whether the machine was left at Center Point without conditions as to the delivery of the machine; or, as expressed in the fourth instruction, whether he left the machine at Center Point "subject to the control and order of the plaintiffs only on condition that they would return the notes and money." The evidence shows that he had surrendered the machine before he returned home, and went from there to Urbana, and informed Mead of what he had done. The plaintiffs, in contemplation of law, then had the machine. The defendant so far had complied with his contract. He had done all that the contract required him to do to rescind it, which was an unconditional return of the machine to the place where he received it. The fact that when he notified Mead that the machine was returned and redelivered he then demanded his notes and money, had nothing to do with the unconditional delivery of the machine. It was then time for plaintiffs to speak and act. The defendant put them in position where they were required to comply with the terms of their contract and exercise their option. We think the instructions complained of are correct, and that the judgment must be                    AFFIRMED.